UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAWK TECHNOLOGY SYSTEMS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> PANDUIT CORP., <br><br> Defendant. | Civil Action No. 1:16-cv-10395 <br><br> Hon. Gary S. Feinerman |

**DEFENDANT PANDUIT CORP.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant Panduit Corp. ("Panduit") respectfully moves this Court to dismiss Plaintiff's Complaint for failure to state a claim.

**I.      INTRODUCTION**

Since the abrogation of Form 18 to the Federal Rules of Civil Procedure, courts in this district and throughout the country have held that a plaintiff alleging patent infringement must set forth sufficient facts to permit the Court to infer that the defendant performs each step of the claimed method of the asserted patent.

Here, Plaintiff Hawk Technology Systems, LLC ("Plaintiff" or "Hawk") alleges that Panduit infringes claim 12 of U.S. Patent No. RE43,462 (the "'462 Patent") by using the IP Video Surveillance System made and sold by third-party Cisco Systems, Inc. ("Cisco"). Plaintiff does not allege that Panduit makes, sells, offers to sell, or imports infringing video surveillance systems; instead, Hawk's infringement claim is based merely on Panduit's use of "the complete suite of Cisco Physical Security solutions in [Panduit's] new world headquarters building and in branch offices." Compl. Ex. A., at 2.

Claim 12 of the '462 Patent is a method claim. Accordingly, to properly plead direct infringement, Plaintiff must allege facts establishing that Panduit performed each step of the claimed method. In an effort to satisfy this pleading obligation, Plaintiff attaches a claim chart as Exhibit B to its Complaint. The Court should dismiss the Complaint for failure to state a claim because the claim chart (even if it is treated as a substantive pleading) does not sufficiently allege facts supportive of a claim of direct infringement by Panduit, for at least two reasons.[1]

First, the claim chart fails to allege facts from which infringement by Panduit of every element of claim 12 could plausibly be inferred. Specifically, the claim chart does not plead facts from which a plausible inference can be made that Panduit performed at least: (a) the element that requires digitizing video from analog cameras, or (b) the element requiring that a *different* format of video be used for the version of the image that is converted and stored as compared with the version that is displayed. If anything, the claim chart alleges facts supporting exactly the opposite on both elements.

Second, the claim chart says nothing about Panduit's actions—it does not even contain the word "Panduit." Instead, the claim chart reads as if Plaintiff had sued Cisco for making and selling the IP Video Surveillance System.[2] The claim chart thus contains recitations from various Cisco documents and "comments" from Plaintiff as to why it believes these statements show infringement. But alleging that *Cisco* sells products that may be *capable* of use in an

---

[1] Plaintiff also alleges that Panduit infringes "one or more of Claim 12's dependent claims." Compl. ¶ 1. Because a dependent claim cannot be infringed unless the independent claim from which it depends is infringed, the deficiencies with respect to claim 12 are also dispositive of all of its dependent claims.

[2] This pattern of suing end users instead of suppliers has resulted in Plaintiff, which is a non-practicing entity, asserting the '462 Patent in over 170 actions in over 50 districts across the country since 2013. To date, the undersigned is not aware of any of these actions reaching the merits of Plaintiff's claims.

allegedly infringing manner does nothing to show that *Panduit* itself actually *performed* any of the steps of method claim 12.

Because Plaintiff's Complaint fails to make a plausible showing of infringement, it should be dismissed for failure to state a claim.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The '462 Patent issued on June 12, 2012 and was shortly thereafter assigned to Plaintiff. Entitled "Video Monitoring and Conferencing System," the '462 Patent is a reissue of United States Patent No. 5,625,410 (the "'410 Patent"). The '462 Patent expired in April 2014. Compl. ¶ 23.

## III. ARGUMENT AND CITATIONS TO AUTHORITY

### A. To State a Claim of Patent Infringement, Plaintiff Must Allege Facts Sufficient to Permit the Court to Infer that Panduit Practiced Each Step of Method Claim 12

In evaluating the sufficiency of a pleading post-*Twombly* and *Iqbal*,[3] the Seventh Circuit has held that a complaint "must contain allegations that state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (internal citations and quotations omitted).[4] In determining whether a claim has "facial plausibility," the Seventh Circuit "accept[s] all well-pleaded facts in the complaint as true, but legal conclusions and

---

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[4] The law of the Seventh Circuit governs this motion because "an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed under the applicable law of the regional circuit." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1282 (Fed. Cir. 2013) (citations omitted).

3

conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* at 616. The "complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief." *Id.* (internal quotations omitted). "If the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief" and, therefore, fall short of stating a claim. *Id.* (internal citations and quotations omitted). The exact level of detail required is analyzed on a case-by-case basis. *FirstMerit Bank, N.A. v. Ferrari*, 71 F. Supp. 3d 751, 755 (N.D. Ill. 2014).

With respect to assertions of direct patent infringement of method claims, a plaintiff "must prove that each and every step of the method or process was performed" by the claimed infringer. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013). Of critical importance, in alleging claims of direct infringement, patent plaintiffs no longer have a safe harbor in the formulaic recitation of elements that was previously set forth in Form 18 of the Federal Rules of Civil Procedure, because Form 18 (along with the other forms that accompanied the Federal Rules) was abrogated in December 2015. As one court in this district put it, the abrogation of Form 18 means "there is no longer an immovable object blocking the path of the *Twombly-Iqbal* canon's unstoppable force." *Atlas IP, LLC v. Exelon Corp.*, No. 15 C 10746, 2016 WL 2866134, *5 (N.D. Ill. May 17, 2016) ("*Exelon*"); *see also RAH Color Techs. LLC v. Ricoh USA Inc.*, Civil Action No. 2:15-cv-05203-JCJ, 2016 WL 3632720, *5 (E.D. Pa. July 6, 2016) ("District courts have found that Form 18's paradigm for pleading direct infringement claims no longer provides the proper measure for the sufficiency of a complaint and that the *Twombly* and *Iqbal* pleading standards apply.") (internal citations omitted; collecting cases).

Accordingly, courts in this district have held that, with respect to claims of direct infringement,

> Factual allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement—they are merely compatible with infringement. Because the failure to practice even a single element is all that separates innovation from infringement, there is always an obvious alternative explanation where a plaintiff does not allege facts about each element.

*Exelon*, 2016 WL 2866134, *5. This is consistent with the approach of the overwhelming majority of district courts that have analyzed the issue following the abrogation of Form 18. *See, e.g., Atlas IP, LLC v. City of Naperville*, Case No. 15 C 10744, 2016 WL 3907029, *3 (N.D. Ill. July 19, 2016) ("Applying the ordinary analysis of *Twombly/Iqbal*, then Atlas must plead that every limitation, or equivalent thereof, in the representative claim can plausibly be found in the accused product."); *Anza Tech., Inc. v. Arris Group, Inc.*, 3:16-cv-01261-BEN-AGS, 2016 U.S. Dist. LEXIS 154374 (S.D. Cal. Nov. 4, 2016) (applying *Twombly/Iqbal* and dismissing complaint; holding that "Plaintiff needs to explain how the chips in ARRIS's products infringe the Asserted Patents so as to give Defendant notice of its claims"); *TeleSign Corp. v. Twilio, Inc.*, Case No. CV 16-2106 PSG (SSx), 2016 WL 4703873, *3 (C.D. Cal. Aug. 3, 2016) (quoting *Exelon*); *e.Digital Corp. v. iBaby Labs, Inc.*, Case No. 15-cv-05790-JST, 2016 WL 4427209, *3 (N.D. Cal. Aug. 22, 2016) ("Several courts applying the *Twombly* pleading standard to claims of direct patent infringement since the abrogation of Form 18 have required plaintiffs to plausibly allege that the accused product practices each of the limitations found in at least one asserted claim.") (citing *Exelon*; *Raindance Techs., Inc. v. 10x Genomics, Inc.*, No. 15-cv-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016)).

To set forth a plausible showing of direct infringement at the pleading stage, therefore, Plaintiff's Complaint must allege facts that would allow the Court to reasonably infer that

Panduit performed each step of the asserted method claim. *See generally id.* Indeed, even before the abrogation of Form 18, one court explained the relevant standard as follows:

> Satisfying the requirements of *Twombly* and *Iqbal*, of course, will require counsel to focus complaints only on viable claims. Thus, before filing a complaint, counsel must ascertain exactly what claims should alleged to be infringed [*sic*] and how they are infringed. That can be done with brevity and clarity if counsel know at the outset their theories of infringement and what can, and cannot, be said about allegedly infringing conduct. That, in turn, may well, indeed likely will, require expert assistance. And, it will mean taking great care when crafting a succinct, but sufficient, patent complaint. But, that is not asking too much.

*Macronix Int'l Co., Ltd. v. Spansion Inc.*, 4 F. Supp. 3d 797, 803 (E.D. Va. 2014). [5]

Plaintiff's Complaint does not meet this standard.

### B. Plaintiff's Allegations of Direct Infringement Fail to State a Claim

In light of the context-specific standard used by the Seventh Circuit to evaluate Rule 12(b)(6) motions, allegations of infringement tied to each of the elements of the asserted claim are crucial. Here, the factual allegations relating to Plaintiff's claim that Panduit infringed method claim 12 are all set forth in the claim chart that accompanies the Complaint as Exhibit B. Although the claim chart facially addresses each element, when closely analyzed, it is clear that Plaintiff does not allege facts sufficient for this Court to plausibly infer that Panduit performed each step of method claim 12. As such, the Complaint does not plausibly show that Panduit's particular implementation of Cisco's IP Video Surveillance products directly infringed the '462 Patent.

---

[5] The fact that Plaintiff appends a claim chart to its Complaint also does not, *ipso facto*, establish plausibility. *See, e.g., Exelon*, 2016 WL 2866134, at *5 (dismissing action without leave to amend despite second amended complaint containing a "table asserting how the Network Products allegedly practice each of Claim 1's limitations").

1. **Plaintiff Does Not Plead Facts from Which Satisfaction of Every Element of Claim 12 Can Be Plausibly Inferred**

Claim 12 recites:

12. The method of simultaneously displaying and storing multiple video images, comprising the steps of:

> receiving video images at a personal computer based system from one or more sources;
>
> digitizing any of the images not already in digital form using an analog-to-digital converter;
>
> displaying at least certain of the digitized images in separate windows on a personal computer based display device, using a first set of temporal and spatial parameters associated with each image in each window;
>
> converting one or more of the video source images into a data storage format using a second set of temporal and spatial parameters associated with each image; and
>
> simultaneously storing the converted images in a storage device.

'462 Patent, Claim 12.

Plaintiff's claim chart is insufficient with respect to at least two key claim limitations.[6]

First, the claim requires "digitizing any of the images not already in digital form using an analog-to-digital converter" and then "displaying … certain of the digitized images."[7] In other words, the plain language of the claim requires the presence of an analog camera whose images are "digitized" using an "analog-to-digital" converter. There cannot be any reasonable dispute

---

[6] To be clear, Panduit does not concede that it practices any of the limitations of claim 12.

[7] On its face, this language necessarily contemplates that video images can be input via analog or digital cameras. *See also* '462 Patent, Abstract ("Camera inputs from digital or analog sources … ."), 2:36-39 ("In general, these conventional systems [*i.e.*, prior art], regardless of the subsequent signal processing employed, accept analog video signals from the camera sources for input to the monitoring system."); 6:41-51 ("FIG. 7 shows a functional diagram of an analog input-digital processing card installed in the PC which allows the use of existing analog cameras and cables with the PC-based monitoring system. This card, which may be obtained from such manufacturers as Nova … features … an analog-to-digital (A/D) converter.").

about this, as Plaintiff has previously acknowledged that the claim requires "specific physical hardware," including an "analog-to-digital converter." Pl. Hawk Tech. Sys.' Responsive Br. in Opp'n to Def. Oaklawn Jockey Club, Inc.'s Mot. to Dismiss Second Am. Compl., *Hawk Tech. Sys., LLC v. Oaklawn Jockey Club, Inc.*, 6:15-cv-6037-RTD, Dkt. 82 at 9 (W.D. Ark. June 6, 2016) (attached hereto as Exhibit A).

Here, however, Plaintiff has not alleged that Panduit's system contained the required analog-to-digital converter, or that Panduit performed the required "digitizing" of images received from an analog camera. Indeed, the only relevant allegation points to exactly the opposite conclusion. According to Exhibit A to Plaintiff's Complaint, Panduit uses "120 Cisco IP Video Surveillance cameras." D.I. #1, Ex. A at 2. An "IP camera" is, by definition, a digital camera; it is not an analog camera and thus there is no need to use the specific physical hardware of an analog-to-digital converter required by the claim element. Because digital IP cameras take in video images in digital form in the first instance, there are no images "not already in digital form" in Panduit's system and, therefore, Panduit does not "digitiz[e] … images not already in digital form using an analog-to-digital converter."

Assuming that Plaintiff complied with its Rule 11 obligations, it must have some information that would have led it to believe that Panduit's system uses analog cameras and a corresponding analog-to-digital converter, and *Twombly* and *Iqbal* require Plaintiff to disclose facts supporting such an allegation. Plaintiff, however, has not set forth such allegations, likely because Panduit's system exclusively uses IP cameras (exactly as pled by Plaintiff). Accordingly, Plaintiff has not—and cannot—allege that Plaintiff's system contained the required "analog-to-digital converter" hardware necessary for meeting the limitation of "digitizing any of the images not already in digital form."

8

Second, the claim requires that two things be done with these "digitized images" (*i.e.*, the images from an analog camera that were digitized in the prior step by the analog-to-digital converter): (1) these images must be displayed on a computer using "a first set of temporal and spatial parameters associated with each image in each window" (in other words, displayed on a computer using a particular frame rate and resolution); and (2) these images also must be ***converted*** to a ***different*** (*i.e.*, a "second") set of temporal and spatial parameters for storage. In other words, the "digitized images" must be displayed in one set of "temporal and spatial parameters" and then converted for purposes of storage in a different set of "temporal and spatial parameters."[8] To plausibly allege direct infringement of Claim 12, therefore, Plaintiff was required to set forth facts from which the Court could infer that Panduit displayed the digitized images using one set of temporal and spatial parameters, and then converted the same images for storage using a different set of temporal and spatial parameters. Plaintiff's claim chart once again fails to allege facts in support of an assertion that Panduit's system performed these steps—and once again, the only relevant allegations say exactly the opposite.

Specifically, the Cisco product literature quoted by Plaintiff plainly states that the network requirements between the camera and the media server are the same as between the media server and the viewing station "because the client workstation is retrieving the same video feed from the server as was transported from the camera to the server originally." Compl. Ex. B, at 8. That is to say, as accused, the IP camera takes in video, which goes directly to the media server to be stored—its parameters are not converted. Those same stored images are then sent to a user for viewing. The size of the window on the viewing station is irrelevant; the same video

---

[8] Indeed, the claim requires a factual allegation that Panduit "convert[] one or more of the video source images into a data storage format" using "a second set of temporal and spatial parameters associated with each image."

feed (with the same parameters) is sent to the computer regardless of how it is ultimately displayed. *See id.* at 7 ("The feeds are resized on the client-viewing station, the data rate from Media Server to viewing station is not changed or adjusted by the media server based on the resolution on the screen."). Thus, according to Plaintiff's own factual allegations, cameras in a Cisco-based system digitally capture data at a particular frame rate and resolution, store those digital images in a media server using that same frame rate and resolution, and then display these same images by a remote viewer in the same frame rate and resolution. These allegations do not plausibly support the assertion—required by the claim—that Panduit used a "first set of temporal and spatial parameters" for displaying the images and then ***converted*** those images using a "second set" of "temporal and spatial parameters" for storing the converted video, thus rendering Plaintiff's Complaint deficient as to these steps, too.[9]

### 2. Plaintiff Does Not Plead How Panduit—as Opposed to Third Party Cisco—Satisfies Each Method Step

Setting aside the above infirmities, the Complaint still fails because the claim chart does not actually allege that ***Panduit*** performed each step of method claim 12. Instead, it quotes verbatim from Cisco product literature and then includes "comments" alleging that the Cisco products "support" the allegedly infringing features.[10] Obviously, if the specific acts of the end

---

[9] Because Plaintiff has not met its burden with respect to independent claim 12, it necessarily fails with respect to its claim of infringement of dependent claims 9, 10, and 11. *See, e.g.*, *Jeneric/Pentron, Inc. v. Dillon Company, Inc.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000) (repeating the "fundamental principle of patent law that 'dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed'") (quoting *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989)).

[10] For context, it is interesting to note that the claim chart appended to the Complaint is identical to the claim chart appended to Plaintiff's complaint against another Cisco customer. *See* Original Complaint for Patent Infringement, *Hawk Technology Systems, LLC v. Del Papa Distributing Company*, No. 6:16-cv-106-JRG-KNM, Dkt. 1 (E.D. Tex. filed Mar. 7, 2016) (attached hereto as Exhibit B).

user are necessary to allege direct infringement—as Plaintiff has previously admitted when justifying its campaign against end-users only—then the rote recitation of the capabilities of the video surveillance product are not sufficient to allege infringement.[11] Rather, Plaintiff must come forward with facts specific to the end user's particular implementation of that third-party system and which would allow the Court to plausibly infer that the end user has performed each step of the method claim. Without any allegation that *Panduit* performed each step of method claim 12, Plaintiff has not alleged facts sufficient for this Court to infer that Panduit was a direct infringer.

## IV. CONCLUSION

Plaintiff's Complaint should be dismissed because the factual allegations relating to the capabilities of Cisco's video surveillance product do not present a plausible claim that Panduit directly infringes claim 12 of the '462 Patent.

Respectfully submitted this 27th day of January, 2017.

/s/ Kevin M. Nelson
Kevin M. Nelson
**DUANE MORRIS, LLP**
190 South LaSalle Street
Suite 3700
Chicago, IL 60603
(312) 499-6770
Email: kmnelson@duanemorris.com

***ATTORNEY FOR DEFENDANT
PANDUIT CORP.***

---

[11] *See, e.g.*, Hawk's Mot. to Dismiss Am. Compl., *On-Net Surveillance Sys., Inc. v. Hawk Tech. Sys. LLC*, 1:15-cv-6653-JGK, Dkt. 26 at 3 (S.D.N.Y. Jan. 7, 2016) (attached hereto as Exhibit C) (arguing that claim 12 requires "third party hardware to perform all of the steps in the claimed method"), *id.* at 13 (alleging that customers are indispensable parties).

*Of Counsel:*
Matthew C. Gaudet (*pro hac vice* admission pending)
David C. Dotson (*pro hac vice* admission pending)
John R. Gibson (*pro hac vice* admission pending)
**DUANE MORRIS, LLP**
1075 Peachtree Street, N.E., Suite 2000
Atlanta, Georgia 30309-3929
(404) 253-6900
Email: mcgaudet@duanemorris.com
Email: dcdotson@duanemorris.com
Email: jrgibson@duanemorris.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

**DUANE MORRIS, LLP**

*/s/ Kevin M. Nelson*
Kevin M. Nelson
190 South LaSalle Street
Suite 3700
Chicago, IL 60603
(312) 499-6770
Email: kmnelson@duanemorris.com

***ATTORNEY FOR DEFENDANT PANDUIT CORP.***